STATE, UNITED NEW JERSEY RAILROAD AND CANAL COMPANY, PROSECUTORS, v. MAYOR AND ALDERMEN OF JERSEY CITY.

The lands of the United New Jersey Railroad and Canal Company acquired and held under the act passed March 30th, 1868, (*Pamph. L.*, *p.* 551,) to increase their depot and terminal facilities at Jersey City, cannot be assessed for taxes to pay the principal and interest on the certificates of indebtedness denominated " Jersey City Water Scrip."

On *certiorari* to the board of public works of Jersey City, in the State of New Jersey, to review certain assessments for water taxes on lands of the prosecutors in Jersey City, for the years 1870, 1871, 1872, 1873, 1874, 1875, 1876, 1877.

Argued at June Term, 1879, before Justices SCUDDER, KNAPP and REED.

For the prosecutors, *I. W. Scudder*.

For the defendants, *L. Abbett*.

The opinion of the court was delivered by

SCUDDER, J. The return to this writ shows that many vacant lots and lots occupied in part by buildings, belonging to the prosecutors, have been assessed for several years for what are called water taxes in Jersey City.

March 18th, 1851, (*Pamph. L., p.* 389,) an act was passed by the legislature appointing commissioners to supply the townships of Hoboken, Van Vorst and the city of Jersey City with pure and wholesome water.

On report of these commissioners another act was passed March 25th, 1852, (*Pamph. L., p.* 419,) to authorize the construction of works for supplying Jersey City and places adjacent with pure and wholesome water. This act gave to the mayor and common council power to construct water works and to lay pipes or conduits for conveying water throughout the corporate limits of Jersey City and adjacent places. For the expenses of construction the mayor and common council were authorized to issue notes, or scrip, or certificates of indebtedness, to be denominated "Jersey City Water Scrip," bearing interest at the rate of six per cent., payable semiannually; the principal being payable not less than fifteen nor more than fifty years from date. The water commissioners appointed by the act were to fix the price which should be assessed upon each house, or other building, and upon vacant lots situated on streets through which distributing pipes might be laid, and such prices were to be fixed with reference to the ultimate paying from the proceeds thereof the interest and principal of the "Jersey City Water Scrip;" and the net proceeds of the water rents, after paying expenses, shall be applied first to the payment of the interest upon the debt for constructing the works, and next to the purchase of the scrip issued therefor, or be invested as a sinking fund, to be applied to the redemption of the scrip at its maturity.

Section seventeen enacts that when the said commissioners shall certify that the works are completed, the mayor and common council shall instruct the assessors to assess, *annually*, upon all grounds liable to taxation, a special tax, at a fixed rate, to be collected and applied to the payment of interest on the water scrip, until the water rents authorized to be collected by the act shall amount to a sum sufficient to pay such interest as it accrues, after which the tax shall cease to be levied.

Subsequently " An act to reorganize the local government of Jersey City," (*Pamph. L.*, 1871, *p.* 1094,) was passed March 31st, 1871. Section eighteen (*Pamph. L.*, *p.* 1131,) authorizes the board of public works to regulate the distribution and use of water and prices for use; and further, the said board shall also from time to time fix a sum to be assessed, *annually*, upon all vacant lots, and lots with buildings thereon, in which Passaic water is not taken, if the same are situated upon any road, street, avenue, alley, or court, through or in which pipes for distributing water are laid, which prices and sums so fixed shall be denominated water rents, and are to be liens upon the property charged therewith until paid. The section also provides for the collection of said rents, with penalties, interest and costs, on non-payment. The board of public works have fixed the rate of these rents at two cents for each one hundred square feet of said vacant lands, and other rates on lands occupied in part by buildings, under this section of the act.

These assessments have been made against the lands of the prosecutors, and lots on which there are buildings in which water is not taken.

The company pay a large amount of water rates at places where they use the water supplied by the city water works, but object to the payment of these special rents, because of their charter exemption from local and municipal taxation.

The charter of the New Jersey Railroad and Transportation Company (*Pamph. L.*, 1832, *p.* 104, § 18,) fixes a rate of tax of one-half of one per cent. upon the true amount of the capital stock of said company, and enacts " that no other or further

tax or imposition shall be levied or imposed upon the said company."

The United New Jersey Railroad and Canal Company is a consolidated corporation, holding the property of the several corporations of which it is composed, with the privileges and exemptions contained in their respective charters. They have the right to this exemption in the charter of the New Jersey Railroad and Transportation Company, one of its constituent members.

All the lots of land and buildings in this controversy have been acquired and are held by the prosecutors, under " An act to enable the United Railroad and Canal Companies to increase their depot and terminal facilities at Jersey City," passed March 30th, 1868, (*Pamph. L., p.* 551,) which relates to the purchase by them of the Harsimus cove property and its connection by a branch railroad with the track of the New Jersey Railroad and Transportation Company. It was among other things enacted in section one of said act, " that it shall be lawful for said United Companies to lay out, construct and build a branch railroad, not exceeding one hundred feet in width, from the said property so purchased as aforesaid to some point in the present line of the New Jersey railroad, in or eastward of the deep cut in Bergen Hill, with as many sets of tracks and rails as the said directors shall deem necessary, &c., and to make said branch railroad elevated so as to pass above the streets of said city at least twelve feet in the clear above said streets," &c.

It appears by the affidavits taken, that the vacant lots, and the lots on which buildings are standing, which have been assessed for water, are on the line of this branch railroad, from the Bergen cut, through Jersey City, to Harsimus cove. They have been acquired and are held for the purpose of constructing this branch, and laying tracks over them. Since the earlier assessments, tracks have been laid over some of these lots, and it is testified that all are needed, and will soon necessarily be occupied by tracks; that the buildings are vacant, with two or three exceptions, or are used by the company's

agents for tools and other uses incident to the work of maintaining and constructing the branch railroad; and it does not appear that the lands thus held are in excess of the quantity the company is entitled to acquire and hold for such purposes. With such a statement of facts, it is clear that these lands, though not all in actual use, have been acquired for and are necessary and indispensable to the contemplated operations of the company, and the accomplishment of the object of their charter, within the strictest rule which has been adopted in our courts, and are certainly obviously appropriate and convenient to carry into effect the franchise granted to construct a branch railroad from Bergen cut to Harsimus cove. If so, then these lands assessed are exempt from any tax or imposition within the terms of the charter of the New Jersey Railroad and Transportation Company. *State, M. & E. R. R. Co., pros., v. Haight,* 6 *Vroom* 40; *State, N. J. R. R. Co., pros., v. Hancock,* 6 *Vroom* 537; *State* v. *Newark,* 2 *Dutcher* 519; *State* v. *Mansfield,* 3 *Zab.* 510.

If there should be any of the lands or buildings rented to others, or used for purposes not authorized by the charter, then there will be no exemption; and this may be ascertained in this case, if necessary, by reference to a commissioner. *Cook* v. *State,* 4 *Vroom* 474; *State, Pa. R. R. Co., pros., v. Wetherill, ante p.* 147.

We have dealt with the facts as now presented by the affidavits taken.

But, it is answered by the defendants, these water rates and assessments are not taxes or impositions within the exempting terms of this charter.

In *State* v. *Newark,* 3 *Dutcher* 185, it was held that these words, " taxes or impositions," must be held to exempt property of corporations from all taxes or impositions for the purpose of revenue, but not to relieve it from such charges as are inseparably incident to its location in reference to other property, or, more definitely, from assessments for special benefits conferred by local improvements. See, also, *City of Paterson* v. *Society, &c.,* 4 *Zab.* 385. In *State, N. J. R. R. & Trans. Co.,*

*pros.,* v. *City of Elizabeth,* 8 *Vroom* 330, this court said these words refer exclusively to taxation for general purposes, and are not applicable to assessments for local improvements.

These assessments are, in form, annual taxes, made under a law intended to provide the whole city of Jersey City with pure and wholesome water; assessed, collected and recovered by the political machinery employed to collect the general taxes; not made on the basis of the amount of peculiar benefits received, but by location and surface area, and are intended to raise a revenue to pay the principal and interest of a debt of the whole city, due on certificates of indebtedness called " Jersey City Water Scrip."

They are further liable to the objection, if put upon the ground of special benefits, that no such advantage is derived in fact by the improvement of the company's lands for the uses to which they are appropriated. At the termini of the roads of this company large quantities of water are used, and the city is paid for this use large sums annually. It has increased from $4870.97 in 1871, to $32,719.61 in 1878. But along the line of the road the property of the company is not appreciated for its uses by the fact that water pipes are in the streets near or bounding on the line of its route; they have no appreciable influence on the value of the lands on which this burden is imposed. It already bears a large proportion of the burden of this water taxation, and these impositions cannot be put upon it under existing legislation and the law as it has been often held in our courts.

These assessments are set aside for the years 1876 and 1877, and costs of the return and printing are allowed to the prosecutors. As to the preceding years, the writ should be dismissed for laches, not as an absolute rule limiting a time within which such assessments for general taxes may be reviewed, but, as applied to this case, in the discretion of the court.